**RANGER COUNTY MUTUAL INSURANCE COMPANY,**
**Petitioner,**

v.

**John Wesley GUIN, et al, Respondents.**

**No. C–5027.**

Supreme Court of Texas.

Jan. 21, 1987.

Rehearing Denied Feb. 25, 1987.

Ralph M. Zeleskey, Zeleskey, Cornelius, Rogers, Hallmark & Borgfeld, Lufkin, for petitioner.

Richard Grainger and Paul Colley, Jr., Grainger, Patterson, Howard & Colley, Tyler, for respondents.

WALLACE, Justice.

This case concerns the liability of an insurance company for negligence in the handling of a claim against its insured. Pursuant to a jury verdict the trial court rendered judgment for the plaintiff insureds. The insurer appealed and the court of appeals affirmed the judgment of the trial court. 704 S.W.2d 813. We affirm the judgment of the court of appeals.

Billy Wayne Peden, as owner of a dump truck, was the named insured under an insurance policy issued by Ranger County Mutual Insurance Company. The policy limits were $10,000/$20,000/$10,000. John Wesley Guin, as an independent contractor, operated the truck to haul for various entities including Peden's employer, Texas Bitulithic Company. Guin, while hauling sand for G. & G. Construction Company, was involved in a collision with a truck owned by Eagle Trucking Company and operated by Robert Fitch. The Peden truck struck the Eagle truck broadside causing Fitch to incur serious injuries including a broken neck and a broken leg. Guin was also injured in the collision. Property damage to the Eagle truck and resulting consequential damages were in excess of $37,000.

Peden and Guin filed suit against Fitch and Eagle Trucking Company for property damage to Peden's truck and personal injury damage incurred by Guin. Fitch and Eagle Trucking Company cross-claimed for personal injury damages to Fitch and property damages to Eagle's truck. Fitch and Eagle later included Texas Bitulithic Com-

pany and G. & G. Construction Company as third-party defendants.

The jury found Guin's negligence to be 100% of the cause of the collision. They assessed actual damages to Fitch in the amount of $216,232.25 and property damages to Eagle in the amount of $47,000.

Claiming that Ranger could have settled this claim within the policy limits, Peden and Guin subsequently brought this suit against Ranger under the "Stowers Doctrine." Based upon a jury verdict, the trial court rendered a judgment of $175,000 actual damages and $50,000 punitive damages for Peden and a like amount for Guin, for a total judgment of $450,000.

The dispositive issues before us are: (1) whether the basis for a "Stowers Doctrine" suit is limited to the insurer's refusal to settle in response to an unconditional offer to settle all claims against the insured within the policy limits and (2) whether there was legally sufficient evidence to support the jury verdict. The trial court submitted the case to the jury based upon the following Special Issue:

### SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that the Defendant, RANGER COUNTY MUTUAL INSURANCE COMPANY, was negligent in the manner in which it handled the claim and lawsuit asserted against its insureds, BILLY WAYNE PEDEN and JOHN WESLEY GUIN?
Answer: "We do" or "We do not."
ANSWER: "We do."

"NEGLIGENCE" as used in this special issue means the failure to exercise that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business. If an ordinarily prudent person in the exercise of ordinary care, as viewed from the standpoint of the insured, would have settled the case, but the defendant failed or refused to do so, then the defendant is negligent. The duty to settle implies the duty to negotiate.

You are instructed that the Defendant, RANGER COUNTY MUTUAL INSURANCE COMPANY, by the nature of its insurance contract with its insureds, BILLY WAYNE PEDEN and JOHN WESLEY GUIN, assumed the responsibility to act as the exclusive and absolute agent of the insured in all matters pertaining to the questions in litigation and, as such agent, the Defendant is held to that degree of care and diligence which an ordinary prudent person would exercise in the management of his own business.

You are further instructed that when an insurance company hires an attorney, pursuant to an insurance contract, to represent an insured in litigation, then that attorney is deemed, under the law, to be the sub-agent of the insurance company. As such, the insurance company is as responsibile to the insured for the conduct of the sub-agent with reference to the litigation as the insurance company is for its own conduct. Therefore, the insurance company is liable to the insured for damages caused to the insured, if any, by the negligence, if any, of the sub-agent in conducting the affairs of the insured with reference to the litigation.

Where an insurance company acts as the agent of its insureds in the defense of a claim for monetary damages, it is bound under the law to give the rights of its insureds at least as great consideration as it does its own.

You are further instructed that under the law of Texas, an insurance carrier is required to exercise ordinary care in considering whether an offer of settlement should be accepted and whether it should offer the liability limits of its insurance policy but it is not necessarily a failure to exercise ordinary care merely because its decision proves to be wrong by reason of a jury verdict; in other words, the duty to exercise ordinary care leaves room for an error in judgment, without negligence necessarily resulting therefrom.

■ Ranger, in multiple points of error, contends that a "Stowers Doctrine" case can be based only upon an insurer's failure to settle a claim against the insured when the claimant offers to settle within the policy limits and fully release the insured from all liability. As authority for this position, Ranger relies on *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved). Peden and Guin also rely on *Stowers* as authority for their contention that an insurer is liable to the insured for negligent handling of the claim.

The insurance policy in *Stowers* contained provisions very similar to the Ranger policy in this case. It gave the insurer the right to take complete and exclusive control of the investigation, negotiation and defense of the claim. The policy limited the insurer's duty to a defense of the insured and payment of any judgment up to the policy limits.

We held in *Stowers* that an insurer which, under the terms of its policy, assumes control of a claim, investigates the claim and hires an attorney to defend the insured, becomes the agent of the insured and the attorney becomes the sub-agent of the insured. We further held in *Stowers* that an insurer is held to that degree of care and diligence which an ordinary prudent person would exercise in the management of his own business. If an insurer refuses an offer of settlement when it appears that an ordinary prudent person in the insured's situation would have settled, the insurer may be held liable for damages. *Stowers*, 15 S.W.2d at 547.

When Ranger undertook to defend Peden and Guin, it became their agent. Ranger hired attorney Otto Ritter to represent Peden and Guin, so Mr. Ritter became their sub-agent. Any negligence on the part of either Ranger or Mr. Ritter would support a suit by Peden and Guin for damages. An insurer's duty to its insured is not limited to the narrow boundaries contended by Ranger, rather it extends to the full range of the agency relationship. In this case, that includes investigation, preparation for defense of the lawsuit, trial of the case and reasonable attempts to settle.

■ There is no contention that Ranger was negligent in investigation or trial of the Fitch/Eagle lawsuit. Peden and Guin contend that Ranger failed to advise them of any settlement offer, and failed to offer its policy limits despite its awareness that the liability factors were adverse and there was a probability that the jury verdict would exceed policy limits.

There is evidence from Ranger's employees in charge of this claim file that their attorney was given no authority to settle the property damage claim in excess of $37,000 even though their limit was only $10,000 and there was a high probability that they would lose on the liability issue. There is evidence to support the contention that Ranger authorized its attorney to offer only the $10,000 personal injury limits of its policy, and nothing for property damage, when it was aware of the very serious injuries incurred by Fitch, that the liability factors favored Fitch and that a jury verdict would very likely exceed the policy limits. Mr. Ritter testified that he did offer the policy limits before judgment. His testimony was corroborated by two lawyers in his law firm. His testimony was contradicted by Peden, Guin, their wives, and the two lawyers representing them. This presented a fact question which the jury found adverse to Ranger.

Eagle and Fitch made the following offer to settle during trial:

We hereby offer to settle the claim of Robert Fitch for personal injuries against Bill Peden and G. & G. Construction and agree not to collect any judgment against Johnny Guinn (sic) for the total settlement sum of $19,500.00. We further offer to settle on the same terms and basis for $19,500.00 for property damage to the Eagle Trucking Company vehicle. This will finally settle the claim of Robert Fitch together with the Workmen (sic) Compensation carrier's subrogation claim and Eagle Trucking's property damage claim. The above offer is based on your representation that the

insurance policies involved have limits of 10/20/10. If limits are otherwise, we offer to settle for such limits less $500.00. We will settle with either defendant separately for one-half of the above offer.

Ranger contends this settlement offer of Fitch and Eagle was conditional in that it offered only to release Peden and not to collect any judgment against Guin. The court of appeals held this to be an unconditional offer to settle. We need not reach that point. The evidence was contradictory as to whether Mr. Ritter advised Peden and Guin of the offer or explained it to them. His failure to do so would support a finding of negligence. The jury found negligence, which was the controlling issue. The finding was supported by the evidence, so the question of an unconditional offer was merely evidentiary.

Mr. Ritter, although hired by Ranger, also represented Peden in his claim for property damage and Guin in his claim for personal injury against Fitch and Eagle. There is evidence that he refused to offer the $10,000 personal injury limit to Fitch unless Eagle agreed to pay Peden and Guin something on their claim. The jury was entitled to consider that evidence in making their determination of Ranger's negligence. There is ample evidence to support the jury verdict of negligence.

Ranger further contends that the instructions accompanying Special Issue No. 1 were inadequate in that they did not outline the legal criteria for handling claims and lawsuits. This contention is erroneous. The instructions given by the trial court properly explained the basis upon which the jury could find negligence in a case of this type. The instructions also properly limited the jury to the evidence before them and cited the pertinent law. The conduct of an ordinary prudent person in the exercise of ordinary care does not require further definition.

Ranger contends that at most it merely breached its contract and there is no basis for an award of exemplary damages. A negligent breach of an agency relationship constitutes an independent tort for which an action for damages will lie. This point of law has been well-settled since this Court's holding in *Williams v. O'Daniels*, 35 Tex. 542 (1871).

In reviewing Ranger's no evidence points attacking the jury's finding of gross negligence, we are guided by our opinion in *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex.1981). We look to evidence of the mental state of the defendant to determine if there was a conscious disregard of the rights of the injured party. The testimony of Ranger's claim personnel and its claim file, as set out in detail in the court of appeals opinion, is some evidence of the requisite mental state of Ranger to support exemplary damages. We have carefully re-examined all of Ranger's points of error and find none of them to be valid.

The judgment of the court of appeals is affirmed.

GONZALEZ, J., filed a dissenting opinion in which SPEARS, J., joined.

GONZALEZ, Justice, dissenting.

I dissent. The court has misapplied the *Stowers* Doctrine in several respects. First, the court has erroneously expanded the doctrine to include all aspects of agency law. Second, an unconditional offer to settle is a necessary prerequisite to an insurer's liability in a Stowers suit. The offer to settle in this case was conditional, thereby relieving Ranger from liability under *Stowers*.[1]

### I. *The Stowers Doctrine.*

The court holds that an insurer can be liable under *Stowers* for negligence other than negligence in failing to settle a claim within the policy limits. This is an incorrect statement of current Texas law.

---

1. *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex.Comm'n App. 1929,

holding approved).

Insurance companies in Texas have a duty to exercise ordinary care in defending lawsuits against insureds. This duty includes the duty to enter into reasonable settlement negotiations or to accept a reasonable settlement offer. This doctrine is utilized to protect an insured from a judgment in excess of policy limits. The controlling issue in a Stowers suit is whether there was "negligence on the part of the [insurer] in failing and refusing to make settlement." *Stowers*, 15 S.W.2d at 548.

In this cause, the trial court submitted the following issue:

Do you find from a preponderance of the evidence that the defendant, Ranger Mutual Insurance Company, was negligent *in the manner in which it handled the claim and lawsuit* asserted against its insureds, Billy Wayne Peden and John Wesley Guin? (emphasis added)
Answer: "We do" or "We do not."
Answer: *"We do."*

This issue was erroneous because it inquired about acts by Ranger other than negligent failure to settle the lawsuit.

The vast majority of cases decided under *Stowers* recognize and acknowledge these principles. *See, e.g., Hernandez v. Great Am. Ins. Co. of New York*, 464 S.W.2d 91, 92 (Tex.1971); *Allstate Ins. Co. v. Kelly*, 680 S.W.2d 595, 598 (Tex.App.—Tyler 1984, writ ref'd n.r.e.); *Rosell v. Farmers Texas County Mut. Ins. Co.*, 642 S.W.2d 278, 279–80 (Tex.App.—Texarkana 1982, no writ); *Wood Truck Leasing, Inc. v. American Auto. Ins. Co.*, 526 S.W.2d 223, 224 (Tex.Civ.App.—San Antonio 1975, no writ); *Cook v. Superior Ins. Co.*, 476 S.W.2d 363, 364 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.); *Globe Indem. Co. v. Gen-Aero, Inc.*, 459 S.W.2d 205, 207 (Tex.Civ. App.—San Antonio 1970), *writ ref'd n.r.e. per curiam*, 469 S.W.2d 164 (Tex.1971); *Highway Ins. Underwriters v. Lufkin-Beaumont Motor Coaches*, 215 S.W.2d 904, 930 (Tex.Civ.App.—Beaumont 1948, writ ref'd n.r.e.). *See also Danner v. Iowa Mut. Ins. Co.*, 340 F.2d 427, 430 (5th Cir. 1964); *Lacey v. Mid-Continent Casualty Co.*, 247 F.Supp. 667 (S.D.Tex.1965).

Commentators are also in agreement. *See* Anderson, *Indemnity Against Punitive Damages: An Examination of Punitive Damages, Their Purpose, Public Policy, and the Coverage Provision of the Texas Standard Automobile Liability Insurance Policy*, 27 Sw. L.J. 593, 625 (1973); Brin, *Insurance Law*, 27 Sw. L.J. 135, 139 (1973); Gibbs, Jillson and Mohney, *Creditor and Consumer Rights*, 38 Sw. L.J. 281, 284 n. 16 (1974); Gonsoulin, *Is an Award of Punitive Damages Covered Under an Automobile or Comprehensive Liability Policy*, 22 Sw. L.J. 433, 444 n. 73 (1968); Green, *Blindfolding the Jury*, 33 Tex.L. Rev. 157, 165 (1954); Kronzer, *The Present Status of the Stowers Doctrine in Texas*, 1 S.Tex.L.J. 167, 168 (1954); Nations, *Excess Liability Damages: The Stowers Doctrine*, 18 S.Tex.L.J. 465, 466–67 (1977); Townend, *Extension of the Stowers Doctrine to Excess Carriers—Some Proposals and Practical Suggestions*, 15 St. Mary's L.J. 689, 692 (1984); Comment, *Insurers Liability for Judgments Exceeding Policy Limits*, 38 Tex.L.Rev. 233, 236 (1959); Comment, *Prepayment and Assignment Under the Texas Stowers Doctrine*, 2 Tex. Tech L.Rev. 69, 69 (1970).

The court states that an insurer's duty in a *Stowers* suit is not limited to due care in failing to settle within the policy limits, but rather extends to the full range of the agency relationship including investigation, preparation for defense of the lawsuit and trial of the case. 723 S.W.2d at 659. However, such alleged negligent acts are subsumed in an issue inquiring whether the insurer was negligent in failing and refusing to make a settlement and should only be considered as factors in an underlying Stowers suit. *See Globe Indem. Co. v. Gen-Aero, Inc.*, 459 S.W.2d at 208; Howell, *Stowers Doctrine in Texas*, 32 Tex.B.J. 374, 458 (1969); Nations, *supra*, at 467. *See also Chancey v. New Amsterdam Casualty Co.*, 336 S.W.2d 763, 765 (Tex.Civ. App.—Amarillo 1960, writ ref'd n.r.e.) (duty to settle implies the duty to negotiate).

The court of appeals held and this court acknowledges that there was "no testimony to indicate that Peden and Guin were not provided a good defense from the standpoint of the investigation of the case and the trial of the case." 704 S.W.2d 819. Therefore, the only issue before the court was whether Ranger negligently failed to settle a claim within the policy limits.

Peden and Guin also contend that they were not informed about the settlement offer; therefore, Ranger should be liable under *Stowers.* It is true that failure to inform an insured about a settlement offer can be a factor in considering negligence under *Stowers. See* Howell, *supra,* at 458. However, failure to inform an insured about a settlement offer can be the basis of liability under *Stowers* but *only if there was an unconditional offer to settle.*

## II. *Unconditional Offer to Settle.*

The settlement offer in question provided, among other things, that the attorneys for Eagle and Fitch would agree "not to collect any judgment against Johnny Guin" in exchange for a joint payment of $19,500 (with release of Peden) or for a payment of policy limits, less $500. The attorneys for Eagle and Fitch testified that even if the policy limits were paid, they fully intended to take Guin's case to judgment and that they intended to secure a jury finding as to Guin's negligence. At no time did the attorneys offer to provide Guin, the Ranger insured, with a release of all claims, a motion to dismiss him from the lawsuit, a covenant not to sue, a release of judgment, or any other legal safeguards that would have protected Guin from a final monetary judgment based solely on his own negligence.

Ranger contends it had no duty to accept the offer of settlement on behalf of Fitch and Eagle because it was conditional. The court states that the question of an unconditional offer in this case was "merely evidentiary." 723 S.W.2d at 660. Therefore, the court did not address this issue. I disagree.

No one disputes that this case was brought under the Stowers Doctrine. Being a *Stowers* case, an unconditional offer to settle is a necessary prerequisite to an insurer's liability for negligently failing to settle a case within the insurance policy limits. *See Jones v. Highway Ins. Underwriters,* 253 S.W.2d 1018, 1022 (Tex.Civ. App.—Galveston 1952, writ ref'd n.r.e.). *See also Danner v. Iowa Mut. Ins. Co.,* 340 F.2d 427, 430 (5th Cir.1964) (interpreting Texas law) (offer conditional on covenant not to sue was insufficient); *Henke v. Iowa Home Mut. Casualty Co.,* 97 N.W.2d 168, 173 (Iowa 1959) (where proposal of claimant was conditional, insurer cannot be held liable for refusal to settle within policy limits). There are also sound policy reasons for this requirement. First, even though Peden and Guin would not collect on the judgment as rendered by the jury, the insured could still be exposed to liability to other defendants through joint and several liability claims. Second, such a duty would undermine the expectations of the insurance consumer who believes he is fully protected by the insurance company and would be fully released and absolved of liability by a settlement. Finally, an unpaid judgment against the insured, even though it would not be collected by the plaintiff, would affect the insured's credit rating, financial reputation, ability to secure insurance, and cause "moral embarrassment."

Since the settlement offer was to only release one insured while allowing judgment against the other Ranger insured, it does not constitute an unconditional offer to settle. Therefore, Ranger should not be held liable for failing to settle the claim.

## III. *The Agency Argument.*

The court states that under *Stowers,* an insurer's duty and therefore liability, "extends to the full range of the agency relationship." 723 S.W.2d at 659. This is an incorrect statement of current Texas law.

The court is correct to point out that the reasoning of the Commission of Appeals in *Stowers* was based in part on agency law.

The commission stated that when an insurance company contracts for the right to take complete and exclusive control of the suit against the insured and settlement, then the insurance company assumes the responsibility to act as the exclusive and absolute agent of the insured. *Stowers*, 15 S.W.2d at 547. However, the rationale and analysis of the commission should not be seized upon to expand a relatively simple principle.

The commission of appeals in *Stowers* likened the insurer as an agent of the insured in order to hold the agent "liable to his principal for negligence ... in conducting his principal's affairs." *Highway Ins. Underwriters v. Lufkin-Beaumont Motor Coaches, Inc.*, 215 S.W.2d 904, 931 (Tex. Civ.App.—Beaumont 1948, writ ref'd n.r. e.). To expand the limited holding of *Stowers* to include all facets of agency law is unwarranted and unwise. It likewise would be an incorrect application of agency law.

In a true agency relationship the principal has power of direction and right of control over an agent. Restatement (Second) of Agency §§ 1, 14 (1958). This is not the case with the typical liability policy or the policy presented in *Stowers*. Instead, the insurer is usually in complete control of the settlement and defense of the claim. "Rather than right of control, the insured has at most a cause of action for negligence ... in the handling of the defense or settlement of the claim against the insured." Keeton, *Liability Insurance and Reciprocal Claims from a Single Accident*, 10 Sw. L.J. 1, 9 (1956). *See also Pattison v. Highway Ins. Underwriters*, 278 S.W.2d 207, 212 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.) (insurance claims adjuster is not the agent of insured); Comment, *An Insurance Company's Duty to Settle: Qualified or Absolute?*, 41 So.Cal. L.Rev. 120, 125 (1968) (conflicting interests of insurer and insured normally preclude an agency relationship). Therefore, I would not expand the Stowers Doctrine to include all aspects of agency law.

The Stowers Doctrine presents a simple and straightforward rule, firmly entrenched in Texas jurisprudence. I see no need to disturb this body of law. For the above reasons, I would reverse the judgment of the court of appeals and render judgment for Ranger.

SPEARS, J., joins in this dissent.