United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 12, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-10986

PRECIS, INC., an Oklahoma Corporation; DAVID MAY,

Plaintiffs-Appellants,

versus

FEDERAL INSURANCE CO. an Indiana Stock Insurance
Company; ZURICH AMERICAN INSURANCE CO.

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
(05-CV-411)

Before GARWOOD, DAVIS, and GARZA, Circuit Judges.

PER CURIAM:[*]

In this insurance coverage dispute, plaintiffs-appellants
Precis, Inc. (Precis) and David May (May) appeal from the district
court's finding of no coverage and the subsequent summary judgment
in favor of defendants-appellees Federal Insurance Co. (Federal)

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and Zurich American Insurance Co. (Zurich). We affirm.

*Background*

Precis purchased an "Executive Protection Policy" from Federal (the Federal policy) under which Federal agreed to cover certain losses relating to certain written demands asserted against Precis or its directors and officers. The Federal policy was in effect from September 1, 2001, to September 1, 2003.

On December 2, 2002, Eugene Kennedy (Kennedy) sent a letter to May, General Counsel of Precis, demanding "consideration and adjustment" for damages that Kennedy claimed were a result of Precis's intentional delay in granting consent for Kennedy to execute a cashless exercise of Kennedy's 15,000 purchase warrants for the common stock of Precis. In his letter, Kennedy claimed that the company's wrongful delay deprived him of more than $120,000 and he suggested payment to him by Precis of $5 per warrant, or $75,000. Kennedy also threatened litigation in the event he could not obtain an appropriate adjustment from Precis.

On December 9, 2002, Robert Kirk (Kirk) sent a letter to Judith Henkels, CEO of Precis, complaining of "the deliberate actions and stalling of David May" that wrongfully denied Kirk and his group of warrant holders the ability to cash in their warrants. Kirk claimed that the group's damages exceeded $1.5 million and he threatened litigation if a settlement could not be reached. Precis, which received the letters in December 2002, did not notify

Federal (and Federal was not aware) of the Kennedy and Kirk letters, or either of them, at the time they were received or until sometime after September 10, 2003.

Precis subsequently purchased a "Directors and Officers Liability and Reimbursement Policy" from Zurich (the Zurich policy) under which Zurich agreed to cover certain losses relating to certain written demands asserted against Precis or its directors and officers. The Zurich policy was in effect from September 1, from September 1, 2003 to September 1, 2004.

On August 29, 2003, Kennedy, Kirk, and other plaintiffs filed suit (the Kirk suit) against Precis and May in state court in Texas. The underlying conduct complained of in the Kirk suit was the same conduct complained of in the Kennedy and Kirk letters in December 2002. The Kirk suit made a claim against Precis and May of the type covered by both the Federal policy and the Zurich policy. The Kirk suit was served on Precis and May on September 10, 2003. Following service, Precis requested coverage under both the Federal policy and the Zurich policy. On March 23, 2004, Zurich denied coverage because the claims in the Kirk lawsuit had first been made in the Kennedy and Kirk letters in December 2002, which was prior to coverage under the Zurich policy. On April 22, 2004, Federal also denied coverage, pointing to the December 2002 letters and noting that the claims had not been reported to Federal "as soon as practicable," as required by the policy.

3

On July 8, 2004, Precis and May sued both Federal and Zurich in state court in Oklahoma, seeking a declaratory judgment concerning coverage under the policies, a judgment for coverage, and costs including attorneys' fees. Federal and Zurich removed the case to the United States District Court for the Western District of Oklahoma and, on Federal's motion, the case was transferred to the Northern District of Texas. All parties moved for summary judgment. On July 12, 2005, the district court granted defendants' motions for summary judgment, denied plaintiffs' motions for summary judgment, and entered final judgment in defendants' favor. Plaintiffs filed a timely appeal.

*Jurisdiction and Standard of Review*

The district court had jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, and this court has jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment *de novo*. Summary judgment is proper if, after adequate opportunity for discovery, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631, 635 (5th Cir. 2002).

*Discussion*

4

The district court determined, as a matter of law, that the December 2002 letters from Kirk and Kennedy were "claims" for the purposes of both the Zurich policy and the Federal policy. We agree. Both policies define a claim as, *inter alia*, "a written demand for monetary damages." Appellants claim that the district court's determination was erroneous because both letters fall short of making a demand for monetary damages. As there is no other purpose for these letters, we disagree. Both letters allege monetary damages and threaten litigation in the event that an appropriate resolution is not obtained. While the Kennedy letter merely "suggests" a payment of $75,000, we are convinced that it is a demand for money, especially considering the amount of monetary damages identified earlier in the letter. Kennedy's use of the word "suggest" indicates that $75,000 is his opening proposal, it does not indicate that he is not demanding money. Similarly, the Kirk letter claims damages of over $1.5 million and offers either settlement or litigation. The fact that Kirk does not propose a specific amount for settlement does not mean that the letter is not a demand for money. We agree with the district court that the December 2002 letters were, as a matter of law, claims as defined in both the Federal and Zurich policies.

The determination that the December 2002 letters were claims disposes of appellants' claim for coverage under the Zurich policy as that policy does not cover claims first made prior to the

5

effective date of the policy.  Therefore, we affirm the summary judgment in favor of Zurich.

Appellants argue that, even if the December 2002 letters were claims, coverage is still available under the Federal policy.  The district court determined, as a matter of law, that the delay of over nine months from the receipt of the claims in December 2002 to notification of Federal in September 2003 was not "as soon as practicable," and, therefore, coverage under the Federal policy was not triggered.  Appellants do not challenge the court's determination (with which we agree) that as a matter of law notification was not made as soon as practicable, but instead argue that Texas law requires Federal to show prejudice from the late notice in order to avoid liability.  Under our holding in *Federal Insurance Co. v. CompUSA, Inc.*, 319 F.3d 746 (5th Cir. 2003) (per curiam), appellants' argument fails.  The *CompUSA* case involved an Executive Protection Policy with the same relevant policy language at issue here,[1] and we held that an insurer is not required by Texas law to show prejudice from late notice to avoid coverage under this type of claims-made policy containing language making timely notification a condition precedent to coverage.  "[A] prior

[1]In this case, the policy at issue provided: "The **Insureds** shall, as a condition precedent to exercising their rights under this coverage section, give to [Federal] written notice as soon as practicable of any **Claim** made against any of them for a **Wrongful Act**."  The *CompUSA* case involved identical language. *See* 319 F.3d at 748.

6

panel's interpretation of state law has binding precedential effect on other panels of this court absent a subsequent state court decision or amendment rendering our prior decision clearly wrong." *Ford v. Cimarron Ins. Co., Inc.*, 230 F.3d 828, 832 (5th Cir. 2000). As there has been no such subsequent decision or amendment, appellants' argument on this issue is foreclosed by *CompUSA*.

## *Conclusion*

For the foregoing reasons, the summary judgment in favor of Federal and Zurich is affirmed.

AFFIRMED.